Irina SMILER et al.

v.

Stephen T. NAPOLITANO, in his capacity as Treasurer of the City of Providence.

No. 2005–48–A.

Supreme Court of Rhode Island.

Dec. 5, 2006.

 

Matthew D. Rocheleau, Esq., Providence, for Plaintiff.

William T. Smitherman, Esq., for Defendant.

Sean M. Fontes, Esq., for R.I. Department of Attorney General.

Present: WILLIAMS, C.J., and GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

The plaintiffs, Irina and Lev Smiler (plaintiffs), appeal the Superior Court's grant of summary judgment in favor of the defendant, Stephen T. Napolitano (defendant), in his capacity as Treasurer of the City of Providence. In this premises liability action, the plaintiffs call upon this Court to address the constitutionality of Rhode Island's Recreational Use Statute, G.L.1956 chapter 6 of title 32, a statute we have addressed on numerous occasions. For the reasons set forth herein, we affirm the judgment of the Superior Court and hold that the Recreational Use Statute does not violate the Rhode Island Constitution.

## I

### Facts and Travel

August 28, 2000, was no walk in the park for Irina.[1] After setting out for a stroll in an area park, Irina was attacked by a swarm of bees as she approached a park bench. Attempting to evade the bees, Irina began running, tripped, and fell. The park, on the corner of Blackstone Boulevard and Hope Street, is owned and operated by the City of Providence (the city) and is open to the public at no charge.

The plaintiffs commenced this action on April 9, 2002, in Providence County Superior Court. The plaintiffs' complaint sought redress for Irina's personal injury, including her pain and suffering, and medical expenses. The plaintiffs also sought damages for Lev's loss of Irina's homemaker services and consortium.

The defendant moved for summary judgment on August 24, 2004, arguing that because the city is entitled to limited immunity under the Recreational Use Statute, judgment as a matter of law should be granted in its favor.[2] The plaintiffs countered that because the statute completely

---

1. For clarity, we will refer to the parties throughout this opinion by their first names.

2. General Laws 1956 § 32–6–3 provides:
   "Except as specifically recognized by or provided in § 32–6–5, an owner of land who either directly or indirectly invites or permits without charge any person to use that property for recreational purposes does not thereby:

   "(1) Extend any assurance that the premises are safe for any purpose;
   "(2) Confer upon that person the legal status of an invitee or licensee to whom a duty of care is owed; nor
   "(3) Assume responsibility for or incur liability for any injury to any person or property caused by an act of omission of that person."

deprived them of a remedy, it was unconstitutional under article 1, section 5,[3] of the Rhode Island Constitution, which recognizes that "[e]very person ought to obtain right and justice * * *." The motion justice granted defendant's motion for summary judgment, holding that the statute relieved defendant of liability and that plaintiffs had not established the statute's unconstitutionality beyond a reasonable doubt. The plaintiffs filed a timely notice of appeal on December 22, 2004. The State of Rhode Island filed a motion to intervene in the appeal, which we granted on February 16, 2006.

## II

## Analysis

## A

### Standard of Review

■ This Court reviews a grant of summary judgment *de novo,* applying the same standards as the motion justice. *Andreoni v. Ainsworth,* 898 A.2d 1240, 1241 (R.I.2006). Summary judgment is appropriate when no genuine issue of material fact is evident from "the pleadings, depositions, answers to interrogatories, and admissions on file, *together with* the affidavits, if any," and the motion justice finds that the moving party is entitled to prevail as a matter of law. Super. R. Civ. P. 56(c).

■ Furthermore, this Court reviews matters of statutory interpretation *de novo. Park v. Rizzo Ford, Inc.,* 893 A.2d 216, 221 (R.I.2006). In so doing, this Court examines the statute as a whole, making every effort to effectuate the legis-

lative intent. *State v. Grayhurst,* 852 A.2d 491, 516 (R.I.2004). This Court has consistently afforded deference to legislative enactments, which we presume are constitutional and valid. *Kass v. Retirement Board of the Employees' Retirement System of Rhode Island,* 567 A.2d 358, 360 (R.I.1989). "[W]e are cognizant of the fact that our judicial role is to interpret and apply statutes and not to legislate * * *." *Lacey v. Reitsma,* 899 A.2d 455, 458 (R.I. 2006). Thus, a challenging party must prove beyond a reasonable doubt that a statute is unconstitutional before a court may declare it invalid. *Gem Plumbing & Heating Co. v. Rossi,* 867 A.2d 796, 808 (R.I.2005). Furthermore, when a statute can be interpreted as having two meanings, only one of which is constitutional, we will construe the statute under its constitutional meaning. *Rhode Island State Police v. Madison,* 508 A.2d 678, 683 (R.I. 1986).

## B

### The Rhode Island Constitution

■ To encourage landowners to open their property to the public for recreational use, Rhode Island's Recreational Use Statute limits landowners' liability for personal injuries sustained by the users of such properties. *See* § 32–6–1. The Recreational Use Statute modifies the common law to change the legal duty that owners owe to users of recreational property. *See Tantimonico v. Allendale Mutual Insurance Co.,* 637 A.2d 1056, 1060 (R.I.1994). This change from the common law treats users of public and private re-

---

**3.** Article 1, section 5, of the Rhode Island Constitution provides:

"Every person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which may be received in one's person, property,

or character. Every person ought to obtain right and justice freely, and without purchase, completely and without denial; promptly and without delay; conformably to the laws."

creational properties as trespassers, thus reducing the duty of care owed to recreational users. *See id.*

■■■■ Reflective of tort law pertaining to trespassers, landowners owe no duty of care to recreational users of their property. *See Lacey,* 899 A.2d at 458 n. 5. An exception lies, however, if a landowner finds a trespasser in a position of peril. *Id.* (citing *Cain v. Johnson,* 755 A.2d 156, 161 (R.I.2000)). After discovering a recreational user in a position of peril, landowners must "guard or warn against a dangerous condition, use, structure, or activity." *See* § 32–6–5(a)(1).[4] The plaintiffs contend that this exception is overly prohibitive and logically impossible to invoke, rendering the statute unconstitutional. We disagree.

■■■■ Citing article 1, section 5, of the Rhode Island Constitution, plaintiffs argue on appeal that the motion justice erred in his application of the Recreational Use Statute and assert that the statute completely bars people injured because of the negligence of the property owner from a remedy.[5]

In *Kennedy v. Cumberland Engineering Co.,* 471 A.2d 195 (R.I.1984), we had the opportunity to address article 1, section 5:

"Clearly, [article 1, section 5], of the Rhode Island Constitution should not be interpreted to bar the Legislature from enacting any laws that may limit a party from bringing a claim in our courts. There are instances in which the Legislature permissibly placed reasonable limits or burdens on the parties' right to

4. The exception codified in § 32–6–5 states, in relevant part, as follows:

"(a) Nothing in this chapter limits in any way any liability which, but for this chapter, otherwise exists:
"(1) For the willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity after discovering the user's peril * * *."

5. Although defendant did not expressly raise the argument, we pause to note that article 1, section 5, is not a self-executing constitutional provision, a necessary precondition to plaintiffs' claim.

" 'A constitutional provision may be said to be self-executing *if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced;* and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law.' " *Bandoni v. State,* 715 A.2d 580, 587 (R.I.1998) (quoting *Davis v. Burke,* 179 U.S. 399, 403, 21 S.Ct. 210, 45 L.Ed. 249 (1900)).
The language of article 1, section 5, convinces us that the provision is not self-executing. First, the purely aspirational language of the provision, indicated by the repeated use of

"ought," lends substantial support to the conclusion that this constitutional provision is announcing a laudable principle and not a workable rule of law. In addition, the fact that article 1, section 5, aims to afford citizens of this state a remedy "by having recourse to the *laws* " suggests that further legislative action is necessary to effectuate this provision's goals. R.I. Const., art. 1, sec. 5 (emphasis added); *see also Bandoni,* 715 A.2d at 595 (quoting *Henry v. Cherry & Webb,* 30 R.I. 13, 36, 73 A. 97, 106–07 (1909) (" 'Although, in a free government, every man is entitled to an adequate legal remedy for every injury done to him, * * * the form and extent of it is necessarily subject to the legislative power.' ")).
We further note, at least one of our sister states has construed in a similar manner its own quite similar constitutional provision, concluding that it "does not itself create new substantive rights but, instead, protects access to our state's courts." *Binette v. Sabo,* 244 Conn. 23, 710 A.2d 688, 691–92 (1998) (reaching this conclusion despite the mandatory phrasing of article 1, section 10, of the Connecticut Constitution, concerning the right of redress for injuries).
Therefore, at the outset, we reject plaintiffs' argument that the Recreational Use Statute deprives them of a remedy to which they otherwise would be entitled.

have their claims adjudicated by the courts.

"The total denial of access to the courts for adjudication of a claim even before it arises, however, most certainly 'flies in the face of the constitutional command found in [article 1, section 5],' * * * and to hold otherwise would be to render this constitutional protection worthless." *Kennedy*, 471 A.2d at 198 (quoting *Lemoine v. Martineau*, 115 R.I. 233, 240, 342 A.2d 616, 621 (1975)). The plaintiffs attempt to analogize *Kennedy* to the present case, but we, like the motion justice, are not persuaded.

In *Kennedy*, this Court struck down a products-liability statute of repose on grounds that the statute "completely denied 'products-liability claimants of their day in court, notwithstanding the merits of their claims and the direct liability of the potential defendants.'" *Walsh v. Gowing*, 494 A.2d 543, 547 (R.I.1985) (quoting *Kennedy*, 471 A.2d at 199). The statute of repose invalidated in *Kennedy* required all civil products liability claims for recovery of damages against any defendant to be brought within ten years after the product first was purchased for use or consumption. *Kennedy*, 471 A.2d at 197. In effect, the statute altogether precluded redress for people who were unaware that their claims were barred until after discovery ensued and the date of the product's initial purchase was ascertained. *Id.* at 197,200.

Only eighteen months after this Court struck down the products-liability statute of repose in *Kennedy*, we upheld a ten-year statute of repose that would bar claims against an improver of real property in *Walsh*. *Walsh*, 494 A.2d at 548. We held that the Legislature's modification of the common law to bar only claims against the improver did not unreasonably deny injured parties access to the courts. *Id.* We noted that even after the ten-year

period had passed, injured parties still had a means of recourse by filing suit against owners or operators of the property instead. *Id.*

Unlike the products-liability statute of repose at issue in *Kennedy*, the Recreational Use Statute does not deprive litigants of their day in court altogether. There is a fundamental difference between a statute that categorically precludes all litigants from seeking redress for their injuries and one that lessens the common-law duty of care that owners of recreational property owe, thereby requiring successful litigants to prove willful or malicious conduct. In the latter situation, a litigant's inability to prove that particular conduct breaches a statutory duty does not offend our constitution. "If it were otherwise the legislature would be barred from altering by way of restricting or extending the provisions of the common law in any manner, regardless of social changes and the experiences of man over centuries. It was never contemplated that the constitution should be so construed." *Fournier v. Miriam Hospital*, 93 R.I. 299, 305, 175 A.2d 298, 301 (1961).

The result we reach herein is not only consistent with this Court's previous decisions but also is consistent with other states' judgments. The courts of both Connecticut and Florida have considered similar statutes in light of state constitutional provisions safeguarding the right of access to justice. *See Genco v. Connecticut Light and Power Co.*, 7 Conn.App. 164, 508 A.2d 58, 63 (1986) (holding a recreational use statute constitutional because it did not preclude litigants from the right to redress for a particular injury, but, rather, redefined the injury that warrants redress or the class of persons who have a right to redress); *Abdin v. Fischer*, 374 So.2d 1379, 1380–81 (Fla.1979) (emphasizing that the Florida Constitution does not prohibit

modifying the standard of care landowners owe to patrons of recreational property).

**■** We additionally disagree with plaintiffs that the statutory scheme sets up an exception that is "logically impossible to apply." In this case, plaintiffs incorrectly read the statute to mean that the city's duty would have arisen only after the bees began attacking Irina. It is clear to this Court that the city's duty would arise at the point when a city employee discovered that Irina was approaching an area where there was a known risk of bees. Although we do not believe that the statute is ambiguous, even if the statutory language could be afforded dual meaning, we will construe the statute under the meaning that is in accord with our constitution. *See Gem Plumbing & Heating Co.,* 867 A.2d at 808. We also are mindful that "under no circumstance will this Court 'construe a statute to reach an absurd result.'" *State v. Menard,* 888 A.2d 57, 60 (R.I.2005) (quoting *State v. Santos,* 870 A.2d 1029, 1032 n. 5 (R.I.2005)). It would be absurd to conclude that the Legislature would require a landowner to sit idly by and wait until peril arose before a duty to warn the individual attached.

We therefore hold that Rhode Island's Recreational Use Statute is constitutional.

## C

### State and Municipal Owned Property

**■** Apart from their constitutional arguments, plaintiffs contend on appeal that the Recreational Use Statute does not apply to state and municipal owned property. After scrutinizing the record, we conclude that plaintiffs' argument is not properly before us. "[I]t is an established rule in Rhode Island that this Court will not review issues that are raised for the first time on appeal." *Richard v. Richard,* 900 A.2d 1170, 1178 (R.I.2006) (quoting *In re Amber P.,* 877 A.2d 608, 619 (R.I.2005)). The record is clear that even the motion justice understood that the only issue before him was the constitutionality of the Recreational Use Statute. In ruling on defendant's motion for summary judgment, the motion justice noted, "[t]he only opposition that the plaintiff has put forward is the alleged unconstitutionality of the statute, arguing that this Court should apply [a]rticle 1, [s]ection 5[,] of the Rhode Island Constitution * * *." Because we find that the statutory argument was not raised before the motion justice, we hold that plaintiffs have waived this issue on appeal.

**■** Even assuming that plaintiffs' argument with respect to state and municipal property is properly before us, we find no merit in their contention.

We have thrice held that the Recreational Use Statute extends to both state and municipal property. In *Hanley v. State,* 837 A.2d 707, 712 (R.I.2003), and *Lacey,* 899 A.2d at 457–58, and this term in *Cruz v. City of Providence,* 908 A.2d 405, 406–07 (R.I.2006), we dismissed precisely the same argument in light of the Legislature's 1996 amendment.

At the time of its enactment in 1978, the Recreational Use Statute defined owner as "the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises." P.L.1978, ch. 375, § 1. The Legislature altered this definition when it amended the statute in 1996. "Owner" is now defined as "the private owner possessor of a fee interest, or tenant, lessee, occupant, or person in control of the premises including the state and municipalities." Section 32–6–2(3), as amended by P.L. 1996, ch. 234, § 1. Citing this updated provision, in *Hanley* we concluded as follows: "[I]t is clear from the unambiguous language of the 1996 amendment that the legislature intended to include the state and municipalities among owners entitled to immunity under the statute, regardless

of when the property was made available to the public for recreational use." *Hanley,* 837 A.2d at 712; *accord Lacey,* 899 A.2d at 457–58.

Before concluding, we reiterate our concern with the troubling results ensuing from the current statutory scheme. In *Lacey,* we expressed our concerns about classifying users of state and municipal-owned recreational property as trespassers, and we continue to do so today. *See Lacey,* 899 A.2d at 458. We find it particularly difficult to hold the state or a municipality harmless for injuries occurring on public property to which our citizens are invited, particularly when the state and its municipalities are presumptively better able to bear the burden of damages than are most users of recreational facilities. *See* Joan M. O'Brien, Comment, *The Connecticut Recreational Use Statute: Should a Municipality Be Immune From Tort Liability?,* 15 Pace L.Rev. 963, 994 (1995). We are additionally concerned about the protection of this state's citizens, given that the statutory scheme does nothing to motivate governmental landowners to make their properties safe. *See Scrapchansky v. Town of Plainfield,* 226 Conn. 446, 627 A.2d 1329, 1340 (1993) (Katz, J., dissenting) (commenting on the Connecticut Recreational Use Statute).

For these reasons, and yet again, we urge the Legislature to revisit the Recreational Use Statute so that we are not again constrained to reach such a troubling result.

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.