**Supreme Court**

No. 2012-269-Appeal.
(PC 10-1940)

Kenneth N. Ingram et al.          :

v.          :

Mortgage Electronic Registration          :
     Systems, Inc., et al.

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Kenneth N. Ingram et al.          :

v.                    :

Mortgage Electronic Registration     :
Systems, Inc., et al.

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.**  This case came before the Supreme Court on April 2, 2014, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided.  The plaintiffs, Kenneth N. Ingram and Olivia Ingram (collectively, plaintiffs), appeal from a Superior Court judgment granting the summary judgment motion of the defendants, Mortgage Electronic Registration Systems, Inc. (MERS)[1] and Deutsche Bank National Trust Company (Deutsche Bank) (collectively, defendants).[2]  After considering the arguments advanced by counsel, we are satisfied that cause has not been shown and that the appeal may be decided at this time.  For the reasons set forth below, we affirm the judgment of the Superior Court.

---

[1] For a comprehensive explication of the role of MERS in the mortgage industry, see our opinion Bucci v. Lehman Brothers Bank, FSB, 68 A.3d 1069, 1072-73 (R.I. 2013).

[2] Loancity, a California corporation, is named as a defendant in the complaint, but it is not a party to this appeal.

**Facts and Travel**

On November 27, 2006, Kenneth Ingram[3] executed a promissory note (the note) in favor of Loancity in the amount of $212,500 in order to finance the purchase of property located at 6 Young Avenue in Providence, Rhode Island (the property). Contemporaneously, plaintiffs executed a mortgage (the mortgage) on the property to secure the note. The mortgage identified plaintiffs as "Borrowers," Loancity as "Lender," and MERS as "a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns." The mortgage provided that the borrower "does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS" the property. Further, the mortgage stated:

> "Borrower understands and agrees that MERS holds only legal title
> to the interests granted by Borrower in this Security Instrument, but,
> if necessary to comply with law or custom, MERS (as nominee for
> Lender and Lender's successors and assigns) has the right: to
> exercise any or all of those interests, including, but not limited to,
> the right to foreclose and sell the Property * * *."

On November 29, 2006, Loancity endorsed the note to IndyMac Bank, FSB (IndyMac). According to defendants, on February 1, 2007, IndyMac transferred the note, endorsed in blank, to Deutsche Bank.[4] IndyMac continued as the servicing agent for the note. On July 11, 2008, the Office of Thrift Supervision (OTS) of the United States Department of the Treasury closed IndyMac and appointed the Federal Deposit Insurance Corporation (FDIC) as receiver. The OTS reorganized IndyMac into a new interim bank known as IndyMac Federal Bank, FSB. On

---

[3] Although both plaintiffs signed the mortgage, it appears that only Kenneth Ingram signed the note.

[4] "An endorsement in blank is one that 'does not identify a person to whom it makes the instrument payable.'" Mruk v. Mortgage Electronic Registration Systems, Inc., 82 A.3d 527, 530 n.3 (R.I. 2013) (quoting G.L. 1956 § 6A-3-205 cmt. 2). "When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." Id. (quoting § 6A-3-205(b)).

March 19, 2009, nearly all of IndyMac Federal's assets were sold to OneWest; as part of the acquisition, OneWest became the servicing agent of the note. On November 4, 2009, MERS—as nominee for Loancity and Loancity's successors and assigns—assigned its interest in the mortgage to Deutsche Bank, which also held the note. Thus, as of November 4, 2009, Deutsche Bank held both the note and the mortgage to the property.

Subsequently, plaintiffs failed to make the required payments in accordance with the terms of the note. At least thirty days prior to March 4, 2010, OneWest—under power of attorney for Deutsche Bank—mailed notice to plaintiffs that a foreclosure sale on the property was scheduled for March 25, 2010. In addition, the foreclosure sale was advertised in the Providence Journal. As scheduled, Deutsche Bank foreclosed on March 25, 2010, and purchased the property at the foreclosure sale for $95,066.40. A foreclosure deed for the property was conveyed to Deutsche Bank on April 8, 2010.

On April 1, 2010, plaintiffs filed a verified complaint in the Superior Court seeking declaratory relief and to quiet title to the property. Attached to the verified complaint were two exhibits, namely, the mortgage and the assignment of the mortgage. On October 12, 2010,[5] defendants filed a verified answer, to which they attached six exhibits, including the mortgage, the note, the assignment of the mortgage from MERS to Deutsche Bank, and the foreclosure deed.

On January 11, 2011, defendants moved for judgment on the pleadings pursuant to Rule 12(c) of the Superior Court Rules of Civil Procedure. In response, on March 23, 2011, plaintiffs filed a forty-five page objection to defendants' motion, to which they attached five additional

---

[5] The parties had stipulated that defendants would have until October 15, 2010 to file an answer.

exhibits that were not part of the pleadings.[6]  In addition, the Superior Court justice allowed both parties to file supplemental briefs for the purpose of distinguishing this case from a recent decision by the trial justice, <u>Porter v. First NLC Financial Services, LLC</u>, No. PC 10-2526, 2011 WL 1251246 (R.I. Super., March 31, 2011).  Both parties then filed lengthy supplemental memoranda and, again, they attached exhibits that were outside of the pleadings.[7]

On May 17, 2012, the Superior Court justice issued a written decision addressing defendants' motion for judgment on the pleadings.  In this decision, the Superior Court justice converted defendants' Rule 12(c) motion for judgment on the pleadings into a motion for summary judgment in accordance with Rule 56 of the Superior Court Rules of Civil Procedure, and granted summary judgment in favor of defendants.  The plaintiffs filed a timely appeal to this Court.

**Analysis**

**Conversion of Rule 12(c) Motion**

On appeal, plaintiffs first argue that the Superior Court justice erred by converting defendants' Rule 12(c) motion for judgment on the pleadings into a motion for summary

---

[6] The plaintiffs' objection contained the following new exhibits: (1) a Limited Power of Attorney from the Federal Deposit Insurance Corporation (FDIC), as receiver of IndyMac, granting to forty-two individuals (listed on "Exhibit A" attached to the Limited Power of Attorney) the power to "execute, acknowledge, seal and deliver" all instruments necessary to evidence the sale and transfer under the Servicing Business Asset Purchase Agreement between the FDIC and OneWest; (2) a flow chart entitled "Dan & Teri Securities Transaction Process Reverse Engineered version 4.1"—although plaintiffs in the instant case are named Kenneth and Olivia Ingram; (3) a flow chart purporting to describe the travel of plaintiffs' mortgage and note; (4) a list entitled "Verified Answers — Signatories By Case," which seems to describe signatories in this and other cases; and (5) a number of verification pages signed on behalf of OneWest and Deutsche Bank and attesting to the answers in this and other cases.

[7] The plaintiffs filed a twenty-four page supplemental brief to which they attached four new exhibits, and defendants filed a fifteen page supplemental brief with a flow chart purporting to describe the travel of plaintiffs' loan and an appendix entitled "New Cases and Authorities" that contained six additional cases.

judgment under Rule 56. Specifically, plaintiffs argue that they were not given proper notice of the trial justice's intention to convert the motion to one for summary judgment or an opportunity to present additional evidence in accordance with Rule 56. Based on our review of the record in this case, we reject this argument.

"A Rule 12(c) motion for judgment on the pleadings provides a trial court with the means of disposing of a case early in the litigation process when the material facts are not in dispute after the pleadings have been closed and only questions of law remain to be decided." Haley v. Town of Lincoln, 611 A.2d 845, 847 (R.I. 1992). However, Rule 12(c) specifically provides that,

> "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

In the case at bar, the record reveals that both parties filed voluminous supplemental materials for the Superior Court justice to consider when deciding the motion for judgment on the pleadings. We note that it was plaintiffs who initially presented materials outside of the pleadings when defending against defendants' Rule 12(c) motion, and who continued to file a plethora of materials that the Superior Court justice considered—in an exercise of his sound discretion—and which led him to convert defendants' motion into a Rule 56 motion. Thus, a party that first introduces, and continues to supply, the materials that serve as a catalyst for conversion in accordance with Rule 12(c) cannot then complain about lack of notice. See Ouimette v. Moran, 541 A.2d 855, 856 (R.I. 1988) ("In view of the fact that [plaintiff] clearly encouraged the trial justice to consider matters outside the scope of the complaint, he cannot now be heard to argue that the trial justice acted improperly in considering the motion as one for

- 5 -

summary judgment."). Accordingly, we are satisfied that plaintiffs were not denied notice or the opportunity to present additional material when the Superior Court justice properly converted defendants' motion for judgment on the pleadings to one for summary judgment.

**Grant of Summary Judgment**

The plaintiffs next argue that the trial justice erred when he determined that no genuine issues of material fact existed and granted summary judgment in favor of defendants. Additionally, plaintiffs argue that the foreclosure sale was not lawfully noticed and conducted. Finally, plaintiffs claim that the Superior Court justice impermissibly relied upon previously decided Superior Court cases in making his decision in this case.

It is well settled that "[t]his Court reviews a trial court's grant of summary judgment de novo." Mruk v. Mortgage Electronic Registration Systems, Inc., 82 A.3d 527, 532 (R.I. 2013) (citing Swain v. Estate of Tyre, 57 A.3d 283, 288 (R.I. 2012)). In so doing, we apply the same standard as the trial justice and "view[] the evidence in the light most favorable to the nonmoving party." Id. (citing Beauregard v. Gouin, 66 A.3d 489, 493 (R.I. 2013)). "Summary judgment is appropriate when no genuine issue of material fact is evident from 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' and the motion justice finds that the moving party is entitled to prevail as a matter of law." Id. (quoting Swain, 57 A.3d at 288). "[T]he nonmoving party bears the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." Id. (quoting Daniels v. Fluette, 64 A.3d 302, 304 (R.I. 2013)). Moreover, we have unequivocally stated that "we will not hesitate to affirm a grant of summary judgment if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case

- 6 -

* * *.'" Beauregard, 66 A.3d at 493 (quoting Lavoie v. North East Knitting, Inc., 918 A.2d 225, 228 (R.I. 2007)).

The plaintiffs proffer five purported genuine issues of material fact, which they allege precluded the grant of summary judgment. We will address each issue seriatim. First, however, we note that plaintiffs supported their arguments on these points exclusively with references to the complaint. This practice flies in the face of plaintiffs' burden to prove the existence of a disputed issue of material fact by competent evidence and the rule that a party may not rest upon mere allegations in the pleadings. Mruk, 82 A.3d at 532. Additionally, we note, yet again, that "the authority of [the foreclosing entity] to foreclose on a property or the authority of MERS to assign the mortgage are questions of law and not questions of fact to be determined by a factfinder." Id.

Much of plaintiffs' attack focuses on the travel of the mortgage and the rights of the mortgage holder.[8] The plaintiffs contend that whether MERS is a mortgagee or nominee with the statutory power of sale is a question of fact. They are wrong. We resolved this issue in Bucci v. Lehman Brothers Bank, FSB, 68 A.3d 1069, 1081 (R.I. 2013). The mortgage at issue in Bucci, 68 A.3d at 1081, stated that "MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property * * *." The Court concluded that "[t]he plaintiffs

---

[8] We assume without deciding that plaintiffs have standing to challenge the assignments of the note and the mortgage. This Court has held that "homeowners in Rhode Island have standing to challenge the assignment of mortgages on their homes to the extent necessary to contest the foreclosing entity's authority to foreclose." Mruk, 82 A.3d at 536. We have yet to address how this narrow exception applies to voidable, as opposed to void, assignments. In Wilson v. HSBC Mortgage Services, Inc., 744 F.3d 1, 10 (1st Cir. 2014), the First Circuit concluded that homeowners must assert that the mortgage assignment is void to have standing. We recently noted in dicta, that the reasoning in Wilson is persuasive. Moura v. Mortgage Electronic Registration Systems, Inc., 90 A.3d 852, 857 (R.I. 2014).

explicitly granted the statutory power of sale and the right to foreclose to MERS, and consequently, MERS has the contractual authority to exercise that right." Id. The mortgage in this case contains an identical provision. Thus, as a matter of law, MERS had the statutory power of sale.

Next, plaintiffs claim that the assignment of the mortgage from MERS to Deutsche Bank was void and therefore Deutsche Bank did not have the ability to foreclose. We resolved this issue in Mruk. In Mruk, 82 A.3d at 538, we noted that a mortgage, which was identical to the mortgage in this case, "explicitly granted the power of sale to MERS and its successors and assigns." We concluded that the assignee of MERS "acquired all the rights which MERS possessed" and therefore possessed "the right to exercise the power of sale." Id. Similarly, here, Deutsche Bank acquired all the rights which MERS possessed, including the right to exercise the power of sale.

The plaintiffs also contend that there is a factual dispute as to the validity of the endorsement of the note in blank by IndyMac. We also resolved this issue in Mruk. In Mruk, 82 A.3d at 533, we recognized the validity of endorsements in blank and concluded that "[t]he plaintiffs['] unsupported challenges to the validity of the endorsement in blank are not sufficient to create a disputed issue of material fact." Similarly, here, plaintiffs have pointed to no evidence to support their contention that the note was invalidly endorsed to Deutsche Bank.

Finally, plaintiffs allege that the foreclosure sale was not properly noticed and conducted. However, plaintiffs' argument is premised upon their misconception of the law that only the original lender, or a lender holding both the note and the mortgage, may invoke the power of sale, and Deutsche Bank was that lender. It is clear, however, that Deutsche Bank held both the note and the mortgage at the time of the foreclosure. In accordance with their statutory power of

sale, and in compliance with the requisite notice of foreclosure, OneWest, acting under power of attorney for Deutsche Bank, properly mailed notice to plaintiffs at least thirty days prior to the sale and advertised the foreclosure sale in the Providence Journal. Therefore, the foreclosure sale was lawfully noticed and conducted.

Accordingly, we are satisfied that there are no genuine issues of material fact and the Superior Court justice appropriately granted summary judgment in favor of the defendants.

## Conclusion

For the reasons set forth above, we affirm the judgment of the Superior Court granting summary judgment in favor of the defendants. The papers in this case may be returned to the Superior Court.



**TITLE OF CASE:**   Kenneth N. Ingram et al. v. Mortgage Electronic Registration Systems, Inc., et al.

**CASE NO:**   No. 2012-269-Appeal.
(PC 10-1940)

**COURT:**   Supreme Court

**DATE OPINION FILED:**   July 2, 2014

**JUSTICES:**   Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**   Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**   Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Allen P. Rubine

**ATTORNEYS ON APPEAL:**

For Plaintiffs:  George E. Babcock, Esq.

For Defendants:  Paul J. Bogosian, Jr., Esq.